FILED

2018 OCT 22  AM 10: 07

CHRISTOPHER M. DeGRAD
CLERK OF COURT
N. DISTRICT OF INDIANA

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BRUCE LLOYD OUTLAW, SR., | ) | Case No. 16-20139-jra |
| | ) | |
| Debtor, | ) | Chapter: 13 |
| | ) | |
| WILLIE T. DONALD, | ) | |
| | ) | |
| Plaintiff, | ) | Judge James R. Ahler |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE LLOYD OUTLAW, SR., | ) | |
| | ) | |
| Defendant. | ) | |

## ADVERSARY COMPLAINT TO EXCEPT DEBT FROM DISCHARGE

Plaintiff Willie T. Donald, by and through his attorneys, Loevy & Loevy, complains of Defendant-Debtor Bruce Lloyd Outlaw, Sr. and states as follows:

### INTRODUCTION

1.    In June 1992, Plaintiff Willie T. Donald was convicted of crimes he did not commit – namely, robbery and murder – due to the misconduct of Defendant-Debtor Bruce Lloyd Outlaw, Sr., among others.

2.    On January 25, 2016, the Superior Court of Lake County vacated Mr. Donald's convictions, and all charges against him were dismissed on January 28, 2016.  By that time – and as a direct result of Defendant-Debtor Outlaw's conduct – Mr. Donald had already lost nearly twenty-four years of his life as an innocent man in prison

3.    In January 2017, Mr. Donald filed a civil rights complaint in the United States District Court for the Northern District of Indiana, asserting federal and state claims against Defendant-Debtor Outlaw and other defendants for the harm they inflicted upon him (the "Civil

1

Rights Litigation"). *See Donald v. Outlaw, et al.*, No. 2:17-cv-00032 (N.D. Ind.). That case is still pending.

4.    Mr. Donald brings this complaint to except any judgment debt resulting from the Civil Rights Litigation from any discharge of Outlaw's debt pursuant to 11 U.S.C. § 523(a)(6).

## Jurisdiction

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Parties

6.    Plaintiff Willie T. Donald lives in Gary, Indiana.

7.    Defendant-Debtor Outlaw is a resident and citizen of the State of Indiana and was, at the time of the events underlying Mr. Donald's wrongful conviction, a police officer with the Gary Police Department.

## Relevant Factual Background

8.    On February 27, 1992, several robberies were committed in the Glen Park neighborhood of Gary, Indiana. During one of the robberies, an individual was shot and killed.

9.    Mr. Donald was subsequently arrested for committing the above-described crimes, even though he was totally innocent. The arrest resulted from police activity conducted by Outlaw, among others.

10.    Mr. Donald was charged and ultimately convicted in June 1992 and sentenced to 60 years in prison. *Indiana v. Donald*, 45G01-9203-CF-00065 (Lake County Sup. Ct.).

11.    Following his conviction, Mr. Donald took steps to prove his innocence. These efforts ultimately led to his convictions being vacated on January 25, 2016, and all charges against him being dismissed on January 28, 2016.

12. On January 24, 2017, Mr. Donald filed the complaint in the Civil Rights Litigation, alleging that Outlaw and others had wrongfully caused him to be arrested and prosecuted for crimes he did not commit by purposefully fabricating false evidence, securing eyewitness identifications using highly suggestive procedures, and suppressing exculpatory information about the identification procedures. A copy of the complaint is attached hereto as Exhibit 1.

13. The injuries Mr. Donald suffered and complains of in the Civil Rights Litigation were due to Outlaw's intentional, willful and malicious acts.

<strong>Defendant-Debtor Outlaw Cannot Discharge<br>a Judgment Debt to Mr. Donald in Bankruptcy</strong>

14. On January 26, 2016, Defendant-Debtor Outlaw filed a voluntary petition for Chapter 13 bankruptcy protection.

15. Mr. Donald did not receive notice of Outlaw's bankruptcy filing until approximately August 23, 2017.

16. Under 11 U.S.C. § 523(a)(6), Defendant-Debtor Outlaw cannot discharge a judgment debt to Mr. Donald because it was incurred as a result of Defendant-Debtor Outlaw's willful, intentional and malicious violation of Mr. Donald's constitutional and state-law rights.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully prays that the Court order that:

(1) the debt of Defendant-Debtor Outlaw to Mr. Donald is non-dischargeable;

      (2)      Mr. Donald's judgment in the Civil Rights Litigation – which judgment is yet to be determined as the Civil Rights Litigation is still pending in the United States District Court for the Northern District of Indiana – is not discharged; and

      (3)      Mr. Donald have such other and further relief as is just.

Dated:  October 17, 2018

Respectfully submitted,

One of Plaintiff's Attorneys

Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
drury@loevy.com

4

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIE T. DONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:17-cv-00032 |
| BRUCE OUTLAW, CARLA K. PYLE, as | ) | |
| special administrator of the ESTATE OF | ) | |
| JOHN E. JELKS, Jr., CITY OF GARY, | ) | JURY TRIAL DEMANDED |
| and other as-yet unknown employees | ) | |
| of the City of Gary | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, WILLIE T. DONALD, by his attorneys, LOEVY & LOEVY, and complains of Defendants BRUCE OUTLAW, CARLA K. PYLE, as special administrator of the ESTATE OF JOHN E. JELKS, Jr., CITY OF GARY, and other as-yet unknown employees of the City of Gary, and states as follows:

## Introduction

1.    Plaintiff Willie T. Donald was wrongfully convicted of murder and robbery, and spent nearly twenty-four years in prison for crimes he did not commit.

2.    Mr. Donald's conviction rested solely on two false eyewitness identifications that Defendants fabricated and manipulated. There was no further evidence, physical or otherwise, linking Mr. Donald to either the murder or the robbery.

3.    In fact, Defendants developed information which conclusively established that Mr. Donald was not the perpetrator seen by one of the

eyewitnesses. The Defendants deliberately suppressed this exculpatory evidence and focused singularly on Mr. Donald, causing his wrongful conviction.

4.    On January 25, 2016, the Superior Court of Lake County vacated Mr. Donald's convictions for murder and robbery. By that time, however, Mr. Donald had already lost nearly twenty-four years of his life as an innocent man in prison as a direct result of Defendants' misconduct.

5.    Plaintiff now brings this action pursuant to 42 U.S.C. § 1983 and Indiana law to redress Defendants' tortious conduct and the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## Jurisdiction

6.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

7.    Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## Parties

8.    Plaintiff Willie "Timmy" Donald is a 48-year old man residing in Gary, Indiana.

9.    At all relevant times, Defendants Bruce Outlaw, John Jelks and other as-yet unknown employees of the City of Gary ("Defendant Officers") were police officers with the Gary Police Department, employed by the Defendant City of Gary and acting under color of law and within the scope of their employment.

2

10.     Carla K. Pyle is the special administrator of the Estate of John E. Jelks, Jr., appointed on January 23, 2017 by the Superior Court of Lake County, Probate Division, Room 2, cause no. 45D02-1701-EU-00004.

11.     The Defendant City of Gary is a municipal corporation under the laws of the State of Indiana.

### The Crimes

12.     On February 27, 1992, several robberies were committed in the Glen Park neighborhood of Gary, Indiana. During one of the robberies, 30-year old Bernard Jimenez was shot and killed.

13.     When Defendants Jelks and Outlaw reported to the scene of the Jimenez homicide they learned that Mr. Jimenez's fiancé, Kimberly Belinsky, had witnessed the shooting.

14.     Defendant Officers obtained a description from Ms. Belinsky characterizing the assailant as a black man with an acne-scarred face, between 5' 6" and 5' 7" tall, medium build, wearing a waist-length dark leather jacket and a black cap on his head.

15.     A woman named Rhonda Williams also reported a robbery that night. Ms. Williams gave police a similar description to Ms. Belinsky's: Williams described the robber as a black male with bad skin, approximately 5' 7", wearing a black leather jacket and a black Kangol cap with a bandana underneath.

16.     Another robbery was reported a few blocks away by a Gary police detective, Mary Banks, and her daughter. Banks also gave a similar description,

noting that the robber wore black clothing and had a scarred complexion. Ms. Banks reported that the robber stated he had just shot someone.

## Defendants' Misconduct

17.     Defendant Outlaw was the lead detective assigned to investigate the Jimenez homicide and the Williams and Banks robberies. Defendant Jelks was assigned to these cases as a junior detective.

18.     Rather than conducting an honest investigation to identify and prosecute the true perpetrator of these crimes, Defendant Officers, sometimes acting alone and sometimes acting in concert, conducted unduly suggestive identification procedures, manufactured false inculpatory evidence to frame Mr. Donald, and lost, destroyed, or withheld material exculpatory evidence that would have helped him demonstrate his innocence at trial.

19.     Shortly following the crimes, Defendant Outlaw spoke with Ms. Williams on the phone and asked her to recount the home invasion and robbery.

20.     Defendant Outlaw took no notes of this conversation and made no formal report of her statement.

21.     Defendant Officers arranged for Ms. Belinsky and Ms. Williams to come to the police department.

22.     At the police station, Defendant Officers placed Ms. Belinsky and Ms. Williams in the same room and told them to look through photo books together to see if they could identify the perpetrator.

23.     Instead of disclosing the suggestive nature of the photo book identification procedures and the cross-contamination between any identification

made by Ms. Belinsky and Ms. Williams, Defendant Officers suppressed the information that the women viewed the photographs together, and fabricated false reports reflecting that the women had each made an independent identification of Mr. Donald.

24.    From that point forward, Defendant Officers focused their investigation solely on Mr. Donald.

25.    In the days after Ms. Williams viewed the photo books, she called the Gary Police Department and reported that she had just seen the man who had robbed her and that he had been on the street near her home.

26.    Defendant Jelks spoke to Ms. Williams shortly after this call, and she conveyed the same information to him.

27.    Defendant Jelks subsequently shared this information with Defendant Outlaw.

28.    At the same time that Ms. Williams saw the robber on the street near her home and called the police, Mr. Donald was at his job at Goldblatt's Department Store, where he worked as a Shipping and Receiving Clerk.

29.    Defendant Officers went to Goldblatt's and verified that Mr. Donald was present at his job at this crucial time.

30.    Prior to Mr. Donald's conviction, Defendant Officers suppressed the information about Ms. Williams' call to the police, her statement that she saw the robber near her house, and the information that Defendant Officers developed proving that Mr. Donald could not have been that man, deliberately withholding

this exculpatory evidence from Mr. Donald, his defense counsel, and the prosecution.

31.    Despite knowing that Mr. Donald could not have been the person Ms. Williams identified as the perpetrator, Defendant Officers continued to pursue Mr. Donald as their only suspect and continued to conduct highly suggestive identification procedures, suppress exculpatory evidence and fabricate evidence to falsely implicate Mr. Donald as the perpetrator of these crimes.

32.    Defendant Officers arrested Mr. Donald and put him in a lineup.

33.    Defendant Officers put Mr. Donald in a lineup in order to manufacture false identifications of him.

34.    Defendant Officers arranged for Ms. Williams, Ms. Belinsky, and Ms. Banks to each view the lineup.

35.    When Ms. Williams viewed the lineup, she told Defendant Outlaw that Mr. Donald looked bigger and taller than the real perpetrator.

36.    In order to obtain an identification, Defendant Outlaw took steps to overcome Ms. Williams' hesitation and convince her that Mr. Donald was guilty, including by providing Ms. Williams with false information.

37.    After the live-lineup, Defendant Outlaw showed Ms. Williams a six-person photo array containing the same photograph of Mr. Donald that she had seen earlier. Defendant Outlaw told Williams to make another identification.

38.    Defendant Officers did not document Ms. Williams' reservations about her identification during the live lineup, or Defendant Outlaw's improper and

highly suggestive tactics which he used to persuade Ms. Williams to identify Mr. Donald.

39.    Defendant Officers deliberately withheld this information from Mr. Donald, his defense counsel, and the prosecution.

40.    As a direct result of the Defendant Officers' fabrication of evidence and their use of highly suggestive identification procedures, Ms. Williams testified at Mr. Donald's criminal trial that she had no doubt that he was the robber.

41.    As a direct result of Defendant Officers' suppression of the true circumstances surrounding Ms. Williams' identification, and their suppression of the information that she identified a man on the street, who could not have been Mr. Donald, as the robber, Mr. Donald was deprived of compelling exculpatory evidence to rebut Ms. Williams' identification.

42.    When Ms. Banks viewed the live lineup containing Mr. Donald, she told Defendant Officers that the robber was not in the lineup.

43.    Defendant Officers withheld the fact that Ms. Banks affirmatively excluded Mr. Donald as the perpetrator.

### Mr. Donald's Innocence

44.    From the very beginning and throughout the decades of his wrongful imprisonment, Mr. Donald has steadfastly maintained his innocence.

45.    Mr. Donald told police that, at the time of the crimes, he was car shopping with his sister and her fiancé.

46.    Defendant Officers ignored this information and made no efforts to verify his alibi.

47.   No physical evidence was ever recovered that implicated Mr. Donald in these crimes in any way.

48.   Following his arrest, Defendant Officers searched Mr. Donald's residence and found nothing inculpatory: there were no proceeds of the robberies, no weapon, and no clothing matching the eyewitness descriptions.

49.   Defendant Officers did not develop any fingerprints or other forensic evidence linking Mr. Donald to the crimes.

50.   The evidence fabricated by Defendant Officers was, therefore, the only evidence linking Mr. Donald to the Jimenez murder and the Williams robbery.

51.   Though Defendant Officers had no physical evidence implicating Mr. Donald, knew that the eyewitness identifications were false and fabricated, and knew that Ms. Williams' subsequent sighting of the true offender established that Mr. Donald was not the perpetrator, Defendants Jelks and Outlaw drafted Probable Cause Affidavits and Information Sheets to initiate criminal charges against Mr. Donald for the Williams robbery and the Jimenez homicide.

**Gary's Flawed Policies and Practices**

52.   The City of Gary and the Gary Police Department have long maintained deeply-flawed policies and practices that have resulted in widespread corruption and a disregard for the constitutional rights of Gary's citizens.

53.   These flawed policies and practices go back at least as early as 1979, when then-Gary Police Chief Charles Boone, facing federal tax fraud charges, alleged he had been framed by fellow Gary police officers in retaliation for his efforts to combat widespread corruption on the force.

8

54.     Despite being on notice of the serious problems on the force, policymakers for the City of Gary failed to take any meaningful action to address these issues.

55.     As a result, the problems continued into the early 1990s, with rampant corruption, abuse of power, and widespread disregard for both police policies and the law.

56.     In 1992, prior to Plaintiff's wrongful arrest, prosecution and conviction, Gary police officer John Bauswell gave sworn testimony detailing the rampant corruption and flawed criminal investigations within the Gary Police Department which had persisted during his eight-year career as a Gary police officer.

57.     Mr. Bauswell described a widespread practice of Gary police officers skimming money and keeping contraband uncovered during investigations for personal use rather than inventorying it as evidence.

58.     Mr. Bauswell alleged that these practices were not only known to but explicitly condoned by the Gary Police Chief and other high ranking officers.

59.     Mr. Bauswell alleged that this corruption was coupled with physical violence used against criminal suspects and other Gary residents, in total disregard for their constitutional rights.

60.     The use of unlawful and unconstitutional violence by Gary police officers ranged from beatings, to setting a suspected drug dealer on fire, all the way up to murder.

9

61.    For example, in 1991, Gary police detectives Derrick Earls and Cory House committed a drug robbery of a Gary home and murdered one of the residents.

62.    Defendant Jelks and Defendant Outlaw were both implicated in the corrupt practices described by Mr. Bauswell, prior to their involvement in Mr. Donald's wrongful arrest, prosecution and conviction.

63.    The same flawed policies and practices continued unabated throughout the 1990s, with Gary police officers involved in rampant corruption and allowed to violate the constitutional rights of Gary residents with impunity.

64.    For example, Gary police officers James Ervin and Louis Roman were part of a drug trafficking ring, and were implicated in laundering drug money and committing drug-related murders in the late 1990s. Ervin was alleged to have committed these violent crimes while wearing his Gary police uniform, badge and gun, and while driving a marked Gary police vehicle.

65.    The same flawed policies and practices continued into the 2000s.

66.    For example, in 2003, Sgt. Lindal Hairston was terminated after threatening and holding a gun to the head of a civilian while off-duty. Hairston was permitted to re-join the force and regain his rank. Mere months after re-joining the force, Hairston was implicated in a false arrest.

67.    Demonstrating the impunity with which Gary police officers violated the rights of citizens, and the ineffective disciplinary measures in place, Hairston was laughing and smiling during disciplinary proceedings for this second incident, stating "Next time I'll come back as Chief."

68.     These same flawed policies and practices pervaded every level of the police department, going right up to the Chief of Police.

69.     For example, in 2007, Gary Police Chief Thomas Houston and Deputy Police Chief Thomas Branson burst into a resident's home, without a warrant or any probable cause, and beat the occupants of that home without justification, including punching a pregnant woman in the stomach.

70.     These same flawed policies and practices persist to the present day.

71.     For example, in a 2013 external audit of the Gary Police Department, officers reported "getting swallowed up in an environment of apathy; political favoritism; . . . poor relations with the community; and poor relationships with their command."

72.     Among the audit's findings were its conclusions that:

- "Orders from high level command are often ignored with no follow-up to ensure the orders are carried out, or to hold personnel accountable for failing to follow orders."
- "There is currently no supervisory training being conducted at any level."
- "Officer performance evaluations are not being conducted and training is minimal. Evaluations are alleged to have not been completed on officers since the 1980's."
- "Standard operating procedures, rules and regulations, and department directives are out of date and not adhered to by the rank and file."

**Mr. Donald's Wrongful Conviction and Eventual Exoneration**

73.     As a direct result of the Defendant Officers' misconduct and the City of Gary's flawed policies and practices, Mr. Donald was falsely arrested, wrongfully prosecuted for crimes he did not commit, and wrongfully convicted of robbery and murder at his criminal trial in June 1992. He was sentenced to 60 years in prison.

74.    Throughout his incarceration, Mr. Donald maintained his innocence and sought assistance to prove it.

75.    In 2013, Ms. Williams came forward and revealed that Defendant Officers had fabricated false evidence, secured eyewitness identifications using highly suggestive procedures, and suppressed exculpatory information about the identification procedures.

76.    Among the information revealed by Ms. Williams was the fact that she and Ms. Belinsky had viewed photo books containing Mr. Donald's photograph together, rather than separately; that she had expressed reservations about her identification to Defendant Outlaw; and that Defendant Outlaw had provided false information to her to assure her that Mr. Donald was guilty.

77.    As a result of Defendant Officers' misconduct and the City of Gary's flawed policies and practices, Mr. Donald spent nearly twenty-four years in prison.

78.    Mr. Donald's convictions were finally overturned on January 25, 2016, and all charges against him were dismissed on January 28, 2016.

### Mr. Donald's Damages

79.    As a direct result of the Defendant Officers' misconduct and the City of Gary's flawed policies and practices, Mr. Donald suffered numerous injuries, including but not limited to loss of liberty, loss of wages, attorney's fees expended in defense of his wrongful prosecution and efforts to prove his innocence, physical injuries and emotional trauma.

12

80.     Prior to his wrongful incarceration, Mr. Donald lived with his family and had a close relationship with his parents and siblings, frequently participating in family gatherings and events.

81.     Prior to his wrongful incarceration, Mr. Donald had been working full-time for several years as a Shipping and Receiving Clerk at Goldblatt's Department Store. In addition, he had nearly completed an educational program to become a welder.

82.     Mr. Donald must now attempt to make a life for himself outside of prison without the benefit of more than two decades of life or work experiences and the opportunities to complete school or build a career. Furthermore, although he has finally been exonerated, his wrongful convictions still appear during the background check process for many jobs, further impeding his ability to find meaningful employment.

83.     The emotional pain and suffering caused by losing more than two decades of his life has been substantial. Mr. Donald was taken from his family and stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right.  He missed the ability to share holidays, birthdays, weddings, and other life events with his loved ones, including funerals for friends and his father, grandfather and other family members. He was also deprived of any opportunity to have romantic relationships, fall in love, and marry, and the fundamental freedom to live one's life as an autonomous human being.

84.    As a result of the foregoing, Mr. Donald has suffered and continues to suffer tremendous damage, including physical suffering, anxiety attacks, and difficulty sleeping, all proximately caused by the Defendant Officers' misconduct.

## LEGAL CLAIMS

### COUNT I
### 42 U.S.C. § 1983 – Due Process

85.    Each Paragraph of this Complaint is incorporated herein.

86.    In the manner described above, the Defendant Officers, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

87.    In the manner described above, the Defendant Officers deliberately withheld material exculpatory and impeachment evidence from Plaintiff, his counsel, and the prosecution, engaged in unduly suggestive identification procedures, and knowingly fabricated false evidence, thereby misleading and misdirecting the prosecution of Plaintiff.

88.    The Defendant Officers' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fifth and Fourteenth Amendments. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

89.    Defendant Officers fabricated the false eyewitness identifications, false police reports and other evidence falsely implicating Mr. Donald as the perpetrator of these crimes.

14

90.     Defendant Officers actively concealed their misconduct, and thus actively concealed from Mr. Donald the fact that he had suffered constitutional and other injuries, and the fact that Defendant Officers had inflicted those injuries.

91.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

92.     As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

93.     The Defendant Officers' misconduct was undertaken pursuant to the policy and practice of the Gary Police Department and City of Gary, to pursue wrongful convictions by conducting profoundly flawed investigations, including by withholding exculpatory information bearing on the crime at issue, conducting unduly suggestive identification procedures, and by fabricating inculpatory evidence.  In this way, the City of Gary violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

94.     These widespread practices, so well-settled as to constitute *de facto* policy in the Gary Police Department, were able to exist and thrive because municipal policymakers charged with overseeing the Department exhibited deliberate indifference to the problem, thereby effectively ratifying it.

15

95.    The widespread practices described in the preceding paragraphs were allowed to flourish because the City of Gary declined to implement sufficient training or any legitimate mechanism for oversight or punishment. Indeed, the Gary Police Department's system for investigating and disciplining police officers accused of misconduct was, and is, for all practical purposes, nonexistent. Moreover, the Department maintained a "code of silence" that effectively eliminated any form of accountability, discipline, or oversight. As a result, officers are led to believe they can act with impunity, thereby encouraging the very type of abuses that befell Plaintiff.

96.    The City of Gary's flawed policies and practices relating to police training, supervision and discipline, and the widespread corruption and entrenched "code of silence" within the Department, pre-date Plaintiff's wrongful conviction, persisted unabated throughout the period of his wrongful incarceration, and continue to this day.

97.    Gary police officers and the other employees of the City of Gary who manufactured criminal cases against individuals such as Plaintiff had every reason to know that they not only enjoyed de facto immunity from criminal prosecution and Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the Defendant Officers' misconduct at issue in this case.

## COUNT II
## 42 U.S.C. § 1983 - Conspiracy to Deprive of Constitutional Rights

98.     Each Paragraph of this Complaint is incorporated herein.

99.     In the manner described above, the Defendant Officers entered into an agreement amongst themselves and other employees of the City of Gary to deprive Plaintiff of his constitutional rights and to participate in an unlawful act against or to act in an unlawful manner toward him, including by conspiring to subject him to prosecution without probable cause, conspiring to conduct unduly suggestive identification procedures, conspiring to withhold material exculpatory and impeachment evidence, conspiring to fabricate inculpatory evidence, and conspiring to inflict emotional distress upon him. In addition, the conspiring Defendants agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

100.    In furtherance of the conspiracy, one or more of the co-conspirators committed an overt act and was an otherwise willful participant in joint activity.

101.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

102.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

103.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the City of Gary's policy and practice in the manner more fully described above.

## COUNT III
### 42 U.S.C. § 1983 - Failure to Intervene

104.    Each Paragraph of this Complaint is incorporated herein.

105.    In the manner described above, the Defendant Officers had a reasonable opportunity to prevent each other's violations of Plaintiff's constitutional rights, as set forth above, but failed to do so.

106.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

107.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

108.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the City of Gary's policy and practice in the manner more fully described above.

USDC IN/ND case 2:17-cv-00032   document 1   filed 01/24/17   page 19 of 23

## COUNT IV
## 42 U.S.C. § 1983 - Malicious Prosecution

109.    Each Paragraph of this Complaint is incorporated herein.

110.    In the manner described above, the Defendant Officers, jointly, and in conspiracy with one another, and acting under color of state law and within the scope of their employment, deprived Plaintiff of his constitutional rights.

111.    The Defendant Officers accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

112.    In so doing, these Defendants caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

113.    The Defendant Officers subjected Plaintiff to unauthorized and arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence and their use of suggestive identification procedures.

114.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

115.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

116.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the City of Gary's policy and practice in the manner more fully described above.

## COUNT V
### State Law – Malicious Prosecution

117.    Each Paragraph of this Complaint is incorporated herein.

118.    In the manner described above, the Defendant Officers, jointly, and in conspiracy with one another, and acting under color of state law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so. These acts violated Mr. Donald's rights under Indiana law.

119.    In so doing, these Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury,

and all such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of his innocence.

120.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

121.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

## COUNT VI
### State Law - Intentional Infliction Of Emotional Distress

122.    Each Paragraph of this Complaint is incorporated herein.

123.    In the manner described above, the Defendant Officers' actions were extreme and outrageous, rooted in an abuse of power and authority, and were undertaken with the intent to inflict, or were in reckless disregard of the high probability that their conduct would inflict, severe emotional distress, and Plaintiff suffered severe emotional distress as a result of Defendant Officers' misconduct.

124.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

## COUNT VII:
### State Law - Negligent Infliction Of Emotional Distress

125.    Each Paragraph of this Complaint is incorporated herein.

126.    In the manner described above, the Defendant Officers' actions were negligent, and Plaintiff suffered serious emotional distress of the type that a reasonable person would expect to occur as a direct result of Defendant Officers' negligence.

127.    As a result of Defendant Officers' misconduct, Plaintiff has suffered and continues to suffer tremendous injuries as described above, including physical injury and sickness and resultant emotional pain and suffering.

## COUNT VIII:
### State Law - Respondeat Superior

128.    Each Paragraph of this Complaint is incorporated herein.

129.    In committing the misconduct alleged in the preceding paragraphs, the Defendant Officers were employees and agents of the City of Gary, acting at all relevant times within the scope of their employment.

130.    Defendant City of Gary is liable as principal for the state law torts committed by its agents.

## COUNT IX:
### State Law - Indemnification

131.    Each Paragraph of this Complaint is incorporated herein.

132.    Indiana law requires public entities to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

133.    In committing the acts alleged in the preceding paragraphs, the Defendant Officers were employees of the City of Gary, acting at all relevant times within the scope of their employment.

WHEREFORE Plaintiff WILLIE T. DONALD respectfully requests that this Court enter judgment in his favor and against Defendants BRUCE OUTLAW, CARLA K. PYLE, as special administrator of the ESTATE OF JOHN E. JELKS, Jr., CITY OF GARY, and other as-yet unknown employees of the City of Gary, awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against each of the individual defendants, and any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff, WILLIE T. DONALD, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**WILLIE T. DONALD**

BY:        /s/ Sarah Grusin
           *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Sarah Grusin
Sam Heppell
LOEVY & LOEVY
311 N. Aberdeen Street, Third Floor
Chicago, Illinois 60607
(312) 243-5900

## <u>CERTIFICATE OF SERVICE</u>

      Scott R. Drury, an attorney, certifies that on October 17, 2018, he served via United States Mail, postage prepaid, the foregoing Adversary Complaint to Except Debt from Discharge on the following counsel and trustees of record:

Kenneth L. Fugate
7225 East Ridge Road
Hobart, Indiana 46342

Paul R. Chael
401 West 84th Drive, Suite C
Merrillville, Indiana 46410

Nancy J. Gargula
100 East Wayne Street, 5th Floor
South Bend, Indiana 46601-2349

_____
SCOTT R. DRURY